UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORETTA ANN SHIPP,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. CV 13-9468 JC<br><br>MEMORANDUM OPINION AND ORDER OF REMAND |

## I.　SUMMARY

On January 6, 2014, plaintiff Loretta Ann Shipp ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").[1] The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; January 7, 2014 Case Management Order ¶ 5.

---

[1] On September 11, 2014, plaintiff filed a Reply ("Plaintiff's Reply").

1

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On August 5, 2010, plaintiff filed an application for Disability Insurance Benefits. (Administrative Record ("AR") 140). Plaintiff asserted that she became disabled on September 30, 2008, due to right knee injury, depression, anxiety, and diabetes. (AR 165). The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert on November 15, 2011. (AR 56-94).

On February 7, 2012, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 29-39). Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments: chronic right patellar tendinitis, diabetes mellitus (type II), depression, and anxiety (AR 31); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 31-32); (3) plaintiff retained the residual functional capacity to perform light work (20 C.F.R. § 404.1567(b)) with additional limitations[2] (AR 32-33); (4) plaintiff could not perform her past relevant work (AR 37); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, specifically office helper and mail sorter (AR 38); and (6) plaintiff's allegations regarding her limitations were not
///

---

[2] The ALJ determined that plaintiff: (i) "[was] unable to stand, walk or sit for more than four hours out of an eight-hour workday for each of those respective activities"; (ii) required a sit/stand option every 30 minutes to stretch; (iii) could not climb ladders/ropes/scaffolds or crouch; (iv) was precluded from exposure to fumes, gases, odors, and chemicals; (v) needed to avoid concentrated exposure to wetness; (vi) was limited to occasional contact with coworkers, supervisors, and the public; and (vii) would miss one day of work per month. (AR 32-33).

credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 36).

The Appeals Council denied plaintiff's application for review. (AR 7).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///
///

1  (4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
4  (5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

**B. Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and

evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed properly to consider the opinions of plaintiff's treating physician and, as a result, the ALJ's residual functional capacity assessment, and in turn the hypothetical question the ALJ posed to the vocational expert, were not supported by substantial evidence.  (Plaintiff's Motion at 4-7).  The Court agrees.  As the Court cannot find that the ALJ's error was harmless, a remand is warranted.

### A. Pertinent Facts

#### 1. Dr. Catherine A. Kim

In an August 2, 2010 Medical Opinion re: Ability to Do Work-Related Activities (Physical) ("August 2010 statement"), Dr. Catherine A. Kim, plaintiff's treating physician, diagnosed plaintiff with bipolar disorder, insulin-dependent diabetes, and right knee pain, and opined that plaintiff (i) could lift and carry 10 pounds occasionally and less than 10 pounds frequently; (ii) could stand and walk about four (4) hours (with normal breaks) during an eight-hour day; (iii) could sit about four (4) hours (with normal breaks) during an eight-hour day; (iv) could sit for 30 minutes before needing to change position; (v) could stand for 30 minutes before needing to change position; (vi) needed to walk around for 30 minutes every 30 minutes; (vii) needed the opportunity to alternate from sitting to standing or walking at will; (viii) could occasionally twist, stoop (bend), and climb stairs; (ix) could never crouch or climb ladders; (x) was limited in pushing/pulling due to an unstable knee; (xi) needed to avoid concentrated exposure to wetness, and avoid all exposure to extreme cold, extreme heat, humidity, noise, fumes, odors,

dusts, gasses, poor ventilation, and hazards (machinery, heights); (xii) was limited in her ability to kneel with the right knee; (xiii) was limited by her bipolar disorder in her ability to work in a stressful environment; and (xiv) would be absent from work about once a month due to plaintiff's impairments or treatment thereof (collectively Dr. Kim's Opinions). (AR 339-41) (emphasis in original).

### 2. Vocational Expert Testimony

At the administrative hearing, the ALJ posed the following hypothetical question to the vocational expert:

> Assume a hypothetical individual of the same age, education and experience as [plaintiff] who can lift 20 pounds occasionally, 10 pounds frequently, can stand and walk four [hours], and sit four [hours], but needs to be able to sit or stand to stretch every 30 minutes. No ladders, ropes or scaffolds. No crouching. No fumes, gases, odors, chemicals. Avoid concentrated exposure to wetness.
> And would miss one day a month.

(AR 88). The vocational expert essentially opined that the hypothetical individual could not perform any of plaintiff's past work, but could do other occupations, including "office worker" and "mail sorter." (AR 89).

At the hearing, plaintiff's attorney asked the vocational expert if there would be any jobs available if the individual in the ALJ's hypothetical question had the additional limitation that "each 30 minutes . . . the [hypothetical] worker would have to walk around for 30 minutes." (AR 90). The ALJ interjected, "[s]o [the worker would] be off task for 30 minutes an hour?" (AR 90). The attorney clarified "Yes, 30 minutes, every 30 minutes." (AR 91). The vocational expert then responded "I would say then that there would be no jobs." (AR 91).

///
///
///

### 3. ALJ Decision

As noted above, in the administrative decision, the ALJ stated that plaintiff had the residual functional capacity to perform light work[3] except plaintiff (i) "[was] unable to stand, walk or sit for more than four hours out of an eight-hour workday for each of those respective activities"; (ii) "require[d] a sit/stand option every 30 minutes to stretch"; (iii) "[could not] climb ladders/ropes/scaffolds or crouch"; (iv) "[was] precluded from exposure to fumes, gases, odors, and chemicals"; (v) "must avoid concentrated exposure to wetness"; (vi) "[was] limited to occasional contact with coworkers/supervisors and the public"; and (vii) "would miss one day of work per month." (AR 32-33).

In the decision, the ALJ specifically discussed Dr. Kim's Opinions:

> Dr. Kim completed a medical source statement on August 2, 2010. She opined [that plaintiff] could lift/carry 10 pounds occasionally and frequently. The [plaintiff] was found able to stand/walk and sit for four hours out of an eight hour workday for each of these respective activities. She requires a sit/stand option every 30 minutes because of right knee pain. The [plaintiff] was entirely precluded from crouching or climbing ladders/ropes/scaffolds. There were no preclusions from reaching, handling (gross manipulation), fingering (fine manipulation) or feeling. Pushing/

---

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time." See Social Security Ruling ("SSR") 83-10. Although they do not carry the "force of law," Social Security Rulings are binding on ALJs. See 20 C.F.R. § 402.35(b)(1); Bray v. Commissioner of Social Security Administration, 554 F.3d 1219, 1224 (9th Cir. 2009) (citation and internal quotation marks omitted). Such rulings "reflect the official interpretation of the [Social Security Administration] and are entitled to some deference as long as they are consistent with the Social Security Act and regulations." Molina, 674 F.3d at 1113 n.5 (citations and internal quotation marks omitted); Heckler v. Edwards, 465 U.S. 870, 873 n. 3 (1984) (discussing Social Security Rulings).

>pulling was entirely precluded. The [plaintiff] was to avoid all
>exposure to extreme heat, extreme cold, humidity, noise, fumes,
>odors, dust, gasses, poor ventilation and hazards. She was to avoid
>concentrated exposure to wetness. The foregoing were based on the
>[plaintiff's] diabetes mellitus and depression/anxiety. Dr. Kim opined
>the [plaintiff] would be absent from work once a month.

(AR 34) (citing Exhibit 2F [AR 339-41]). The ALJ also stated that Dr. Kim's Opinions "are entitled to controlling weight based on their consistency with the evidence." (AR 34).

### B. Pertinent Law

#### 1. Medical Opinion Evidence

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among opinions provided by three types of physicians, specifically (1) "those who treat the claimant" (*i.e.*, "treating physicians"); (2) "those who examine but do not treat the claimant" ("examining physicians"); and (3) "those who neither examine nor treat the claimant" ("nonexamining physicians"). Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996)) (quotation marks omitted). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[4] See id. (citation omitted); see also Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (opinion from treating physician generally given greater weight because such a physician "is employed to

///

---

[4]"The weight afforded a nonexamining physician's testimony depends 'on the degree to which [the physician] provide[s] supporting explanations for [such] opinions.'" Garrison, 759 F.3d at 1012 (citations omitted).

cure and has a greater opportunity to know and observe the patient as an individual") (citation and quotation marks omitted).

A treating physician's opinion is given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record. . . ." 20 C.F.R. § 404.1527(c)(2); see Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (citing id.). Even if not "controlling," a treating physician's opinion often is "entitled to the greatest weight and should [still] be adopted. . . . "[5] Orn, 495 F.3d at 632 (quoting Social Security Ruling 96-2p at 4) (quotation marks omitted).

A treating physician's opinion is not necessarily conclusive, however, as to a claimant's medical condition or disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). An ALJ may reject a treating physician's uncontroverted opinion by providing "clear and convincing reasons supported by substantial evidence in the record." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted). Where a treating physician's opinion conflicts with another doctor's opinion, an ALJ may reject the treating opinion "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted).

---

[5] If a treating physician's opinion is not entitled to "controlling" weight, an ALJ must consider multiple factors to determine the weight to afford the treating physician's opinion, including (i) "[l]ength of the treatment relationship and the frequency of examination"; (ii) "[n]ature and extent of the treatment relationship"; (iii) "supportability" (*i.e.*, the amount of "relevant evidence . . ., particularly medical signs and laboratory findings" supporting an opinion and the quality of the "explanation [a treating physician gives] . . . for an opinion"); (iv) "[c]onsistency . . . with the record as a whole"; (v) "[s]pecialization" (*i.e.*, "[whether an] opinion [provided by] a specialist about medical issues related to his or her area of specialty"); and (vi) "[o]ther factors . . . which tend to support or contradict the opinion" (*i.e.*, the extent to which a physician "is familiar with the other information in [a claimant's] case record," or the physician understands Social Security "disability programs and their evidentiary requirements"). 20 C.F.R. §§ 404.1527(c)(2)-(6).

An ALJ may demonstrate "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (quoting Reddick, 157 F.3d at 725) (quotation marks omitted); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (same) (citations omitted); see also Magallanes, 881 F.2d at 751, 755 (ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). An ALJ "must do more than offer [] conclusions." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("broad and vague" reasons for rejecting treating physician's opinion insufficient) (citation omitted). "[The ALJ] must set forth his [or her] own interpretations and explain why they, rather than the [physician's], are correct." Embrey, 849 F.2d at 421-22.

### 2. Step Five

If, at step four, the claimant meets his or her burden of establishing an inability to perform past work, the burden then shifts to the Commissioner to show, at step five, that the claimant can perform other work that exists in "significant numbers" in the national economy (whether in the region where such individual lives or in several regions of the country), taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)); 42 U.S.C. § 423(d)(2)(A). The Commissioner may satisfy this burden with testimony from a vocational expert regarding "jobs the claimant, given his or her residual functional capacity, would be able to do[] and [] the availability of such jobs in the national economy." Tackett, 180 F.3d at 1101. The ALJ may elicit such opinion testimony by posing a hypothetical question to the vocational expert at the hearing that includes the limitations and restrictions of the particular claimant. See id. ("At the hearing, the ALJ poses hypothetical questions to the vocational expert that 'set out

1 all of the claimant's impairments' for the vocational expert's consideration.")
2 (citation omitted).  The vocational expert's testimony in response may constitute
3 substantial evidence of a claimant's ability to perform work which exists in
4 significant numbers in the national economy only if the ALJ's hypothetical
5 question included all of the limitations and restrictions of the claimant that the
6 record supported.  Id. (ALJ's depiction of claimant's disability in hypothetical
7 question "must be accurate, detailed, and supported by the medical record");
8 Embrey, 849 F.2d at 422 ("Hypothetical questions posed to the vocational expert
9 must set out *all* the limitations and restrictions of the particular claimant . . . .")
10 (emphasis in original; citation omitted).

   **C.   Analysis**

12       First, as the parties basically agree (Plaintiff's Motion at 5-7; Defendant's
13 Motion at 2; Plaintiff's Reply at 3-4), the ALJ failed properly to consider Dr.
14 Kim's Opinions and/or account in plaintiff's residual functional capacity
15 assessment for several functional limitations identified therein.  For example,
16 although the ALJ wrote that "[Dr. Kim] opined the [plaintiff] could lift/carry 10
17 pounds both occasionally and frequently" (AR 34) (emphasis added), Dr. Kim
18 actually opined in the August 2010 statement that plaintiff could lift and carry 10
19 pounds occasionally and "less than 10 [pounds]" frequently.  (Compare AR 34
20 with AR 339) (emphasis added).  The ALJ also wrote that Dr. Kim "entirely
21 precluded [plaintiff] from . . . climbing ladders/ropes/scaffolds," but Dr. Kim's
22 August 2010 statement contains no preclusion from climbing "ropes" or
23 "scaffolds."  (Compare AR 34 with AR 340).  The ALJ's incorrect
24 characterization of the medical opinion evidence calls into question the validity of
25 both the ALJ's evaluation of Dr. Kim's Opinions and the ALJ's decision as a
26 whole.  See, e.g., Regennitter v. Commissioner, 166 F.3d 1294, 1297 (9th Cir.
27 1999) (A "specific finding" that consists of an "inaccurate characterization of the
28 evidence" cannot support adverse credibility determination); Lesko v. Shalala,

1995 WL 263995 *7 (E.D.N.Y. Jan. 5, 1995) ("inaccurate characterizations of the Plaintiff's medical record" found to constitute reversible error).

Moreover, although the ALJ gave Dr. Kim's Opinions "controlling weight" (AR 34), the ALJ did not incorporate into plaintiff's residual functional capacity assessment Dr. Kim's lift/carry limitations, but instead assessed that plaintiff could do a range of "light work" – which, among other things, involves lifting up to "20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).  In addition, nowhere in the decision did the ALJ mention Dr. Kim's opinions that plaintiff needed to "walk around" for 30 minutes every 30 minutes, or several other significant functional limitations identified by Dr. Kim – *i.e.*, that plaintiff (i) was limited in her ability to kneel with the right knee; (ii) was limited in her ability to work in a stressful environment; (iii) needed the opportunity to alternate from sitting to standing or walking at will; and (iv) could occasionally twist, stoop (bend), and climb stairs. (Compare AR 34 with AR 340-41).  The ALJ does not provide a sufficient explanation for the implicit rejection of such probative evidence.  See Garrison, 759 F.3d at 1012 (citation omitted) (error for ALJ "not [to] explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another"); see also Ghanim v. Colvin, __ F.3d __, 2014 WL 4056530, *5 (9th Cir. Aug. 18, 2014) ("Even if a treating physician's opinion is contradicted, the ALJ may not simply disregard it."); Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ "must explain why 'significant probative evidence has been rejected.'") (citation omitted).

Second, the ALJ's assessment that plaintiff had the residual functional capacity to do a range of "light work" is not supported by substantial evidence. Although, as the ALJ noted, the state-agency reviewing physician essentially concluded that plaintiff could do light work (*i.e.*, "lift/carry 20 pounds occasionally and 10 pounds frequently") (AR 34) (citing Exhibit 7F at 2 [AR

529]), the ALJ gave little weight to the nonexamining physician's opinions.  (AR 34).  In addition, in reaching such conclusions, the state-agency physician primarily relied on findings provided by Dr. Kim.  (AR 529).  Thus, to the extent the nonexamining physician's opinions conflict with the more limited conclusions of Dr. Kim based on the same objective findings, they cannot constitute substantial evidence supporting the ALJ's assessment that plaintiff had the residual functional capacity to do light work.  Cf. Orn, 495 F.3d at 632 ("When [a nontreating] physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the [nontreating] physician are not 'substantial evidence.'"); Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (nonexamining physician's conclusions, with nothing more, not substantial evidence in light of "the conflicting observations, opinions, and conclusions" of examining physician); see also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000) (opinions of nontreating, nonexamining physicians based on review of reports from claimant's treating physicians "[did] not constitute substantial evidence on the record as a whole" of how claimant's impairments affected his ability to function).

      Since, apart from Dr. Kim's Opinions, the record contains no assessment by a treating or examining doctor regarding the effect of plaintiff's physical impairments on her ability to function, it appears that the ALJ's physical residual functional capacity assessment was erroneously based solely on the ALJ's own, lay interpretation of plaintiff's testimony and other raw medical evidence in the record.  (AR 32-37); see Penny, 2 F.3d at 958 ("Without a personal medical evaluation it is almost impossible to assess the residual functional capacity of any individual."); Nelson v. Heckler, 712 F.2d 346, 348 (8th Cir. 1983) (per curiam) ("'[T]o attempt to evaluate disability without personal examination of the individual and without evaluation of the disability as it relates to the particular person is medical sophistry at its best.'") (citation omitted); see also Tagger v.

Astrue, 536 F. Supp. 2d 1170, 1181 (C.D. Cal. 2008) ("ALJ's determination or finding must be supported by medical evidence, particularly the opinion of a treating or an examining physician.") (citations and internal quotation marks omitted); Mendoza v. Barnhart, 436 F. Supp. 2d 1110, 1116 (C.D. Cal. 2006) (ALJ failed adequately to develop the record where medical evidence "[did] not contain any opinion by a treating or examining physician regarding [the] plaintiff's [residual functional capacity], and ALJ failed to get such an opinion."); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("[ALJ] must not succumb to the temptation to play doctor and make . . . independent medical findings.") (quoting Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996)) (quotation marks omitted); Winters v. Barnhart, 2003 WL 22384784, at *6 (N.D. Cal. Oct. 15, 2003) ("The ALJ is not allowed to use his own medical judgment in lieu of that of a medical expert.") (citations omitted).

Third, a remand is warranted because, as a consequent of the foregoing, the ALJ posed an incomplete hypothetical question to the vocational expert. As noted above, the ALJ's hypothetical question did not include, among other things, a limitation that plaintiff needed to "walk around" for 30 minutes every 30 minutes. (Compare AR 88 with AR 340). Accordingly, the vocational expert's testimony based on such incomplete hypothetical, which the ALJ adopted (AR 38), could not serve as substantial evidence supporting the ALJ's determination at step five that plaintiff could perform the occupations of office helper and mail sorter. See, e.g., Robbins, 466 F.3d at 886 (finding material error where the ALJ posed an incomplete hypothetical question to the vocational expert which ignored improperly-disregarded testimony suggesting greater limitations).

Finally, the Court cannot find the ALJ's errors harmless. As plaintiff points out, the vocational expert essentially testified on cross-examination that there would be no jobs that plaintiff – or a hypothetical worker with the same characteristics as plaintiff – could do if "each 30 minutes . . . the worker would

have to walk around for 30 minutes." (AR 90-91). Moreover, defendant points to no persuasive evidence in the record which otherwise could support the ALJ's determination at step five that plaintiff was not disabled. See Stout, 454 F.3d at 1055 (ALJ's error harmless where it is "inconsequential to the ultimate nondisability determination").

## V.   REMAND FOR FURTHER ADMINISTRATIVE PROCEEDINGS

Plaintiff contends that remand for immediate payment of benefits is required. (Plaintiff's Motion at 7-8). The Court disagrees.

When a court reverses an administrative determination, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and quotations omitted); Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (same) (citing id.). Even so, the choice whether to reverse and remand for further administrative proceedings, or to reverse and remand for immediate payment of benefits is within the discretion of the Court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Reddick, 157 F.3d at 728.

Where, like here, an ALJ fails to provide a legally sufficient reason for rejecting significant, probative medical opinion evidence, pursuant to the Ninth Circuit's "credit-as-true rule," reversal and remand for immediate payment of benefits is generally required if (1) "the record has been fully developed and further administrative proceedings would serve no useful purpose"; (2) "the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion"; and (3) "if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020 (citations omitted). Even if all conditions of the "credit-as-true rule" are satisfied, however, remand for further proceedings (as opposed to the immediate payment of benefits) is appropriate

"when . . . an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." Id. at 1021 (citing Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003)).

Here, remand for immediate payment of benefits under the "credit-as-true rule" would not be appropriate. First, the vocational expert's opinion that there would be no jobs if a hypothetical individual with the same characteristics as plaintiff also needed to "walk around for 30 minutes" every 30 minutes (AR 91) appears to have been based on an additional assumption (suggested by the ALJ) that the hypothetical worker would be "off task" during each 30 minute period of walking. (AR 90-91). Dr. Kim, however, did not opine that plaintiff would necessarily be "off task" during any period of walking (AR 340), and plaintiff points to no other evidence that supports the additional assumption. Thus, even crediting as true Dr. Kim's opinion that plaintiff needed to walk around for 30 minutes every 30 minutes, it is unclear that the vocational expert would necessarily have opined that there would be "no work" for plaintiff absent the additional assumption that plaintiff would also be "off task" while walking around. Accordingly, the Court cannot conclude that the ALJ would be <u>required</u> to find plaintiff disabled on remand. See Garrison, 759 F.3d at 1022 (noting that determination of whether ALJ "would be required to find [] claimant disabled on remand," in part, requires analysis of the "strength of the improperly discredited evidence").

Even so, in light of the evidence as a whole, the Court has serious doubt that plaintiff was, in fact, disabled within the meaning of the Social Security Act as of the date of the ALJ's decision. For example, even if Dr. Kim's Opinions were properly considered and given controlling weight, there is serious doubt as to whether plaintiff could be found disabled based upon such opinions alone – especially since the ALJ rejected a subsequent medical statement from Dr. Kim because it was unsupported by the objective medical evidence and conflicted with

the opinions in the August 2010 statement.  (AR 34-35) (citing Exhibit 9F [AR 540-42]).  In addition, plaintiff points to no other medical opinion in the record which states that she could not work for any twelve-month period.  Cf. Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (in upholding the Commissioner's decision, the Court emphasized:  "None of the doctors who examined [claimant] expressed the opinion that he was totally disabled"); accord Curry v. Sullivan, 925 F.2d 1127, 1130 n.1 (9th Cir. 1990) (upholding Commissioner and noting that after surgery, no doctor suggested claimant was disabled).

Moreover, as the ALJ noted in discrediting plaintiff's subjective complaints – a determination plaintiff has not challenged – plaintiff's Function Report reflects that plaintiff's daily activities included "preparing complete meals daily, doing laundry, going out daily on her own, shopping in stores weekly, reading, going to school and working on the computer daily[,] . . . [and] go[ing] to a coffee shop, school and library on a regular basis."  (AR 36) (citing Exhibit 3E [AR 172-79]).  In a Third Party Function Report (which plaintiff also does not challenge), plaintiff's spouse "reiterated the activities described by [plaintiff] in her Function Report" and also "reported [that plaintiff] rides a bicycle [and] goes to meetings daily and attends church."  (AR 36) (citing Exhibit 4E [AR 188-95]).  Plaintiff's ability to engage in what the ALJ justifiably characterized as a "broad range of activities of daily living" (AR 37) raises very serious doubt as to whether plaintiff is truly disabled.  Cf. Morgan, 169 F.3d at 601-02 (ALJ may reject medical opinion that is inconsistent with other evidence of record including claimant's statements regarding daily activities).

///
///
///
///

## VI. CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is reversed in part, and this matter is remanded for further administrative action consistent with this Opinion.[6]

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: September 26, 2014

                                       /s/
                                Honorable Jacqueline Chooljian
                                UNITED STATES MAGISTRATE JUDGE

---

[6] The Court need not, and has not adjudicated any other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payment of benefits would not be appropriate. Nonetheless, on remand the ALJ may wish to consider (1) whether, after fully considering Dr. Kim's Opinions, the record should be developed with additional evidence from an examining physician; and (2) the effect plaintiff's obesity in combination with the claimant's other impairments, may have on plaintiff's functional abilities.